## STANLEY J. PAC, COMMISSIONER OF ENVIRONMENTAL PROTECTION *v.* JAMES F. ALTHAM, JR.
### (AC 17715)

Foti, Lavery and Hennessy, Js.

Submitted on appellant's brief May 1—officially released July 21, 1998

*Richard Blumenthal,* attorney general, and *Robert B. Teitelman,* assistant attorney general, filed a brief for the appellant (plaintiff).

*Opinion*

HENNESSY, J. The plaintiff, the commissioner of environmental protection (commissioner), appeals from the trial court's order exempting certain moneys of the defendant, James F. Altham, Jr., from execution. Ultimately, two bank executions were issued, one which was untimely and one timely served. The trial court held that the moneys were exempt from execution because, for a period of time, the moneys were improperly held as a result of the untimely execution. On appeal, the commissioner claims that the trial court improperly created an exemption not otherwise provided for by statute. We agree and reverse the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. On January 31, 1992, the trial court, *Hon. Norris L. O'Neill,* judge trial referee, found that Altham had violated Connecticut hazardous waste laws and regulations in connection with his company. Judgment issued against Altham in the form of injunctive relief and $18,000 in civil penalties. Altham failed to pay the civil penalties, and the commissioner applied for a bank execution to levy Altham's funds.

On February 3, 1997, the trial court issued a bank execution in the amount of $18,000, which was not served on Altham's bank until April 29, 1997. On May 21, 1997, Altham sent a facsimile of his exemption claim form to the bank, which the bank properly forwarded to the Superior Court. A hearing on these issues was held before the trial court, *Berger, J.*, on August 25, 1997. At this time, the trial court questioned the timeliness of the service of the execution on the funds. On August 29, 1997, the trial court determined that the service of the first bank execution by the sheriff was untimely and, therefore, void.

On August 26, 1997, prior to his knowledge of the trial court's ruling on the first execution, the commissioner applied for and received a second bank execution to levy Altham's funds. Altham was notified on August 29, 1997, of the second execution, and on September 11, 1997, Altham properly filed an exemption claim form asserting that the funds were exempt from execution because the moneys had been improperly held by the first execution.

On October 20, 1997, a hearing on the second execution was held before Judge Berger. The trial court ruled that the funds should be exempt from the second execution because but for the fact that the funds had been held improperly under a stale execution, the funds would have been available to Altham to spend. The trial court reasoned that if the funds had been available, they would not have existed at the time the second execution was served. Therefore, the moneys should not now be subject to a properly served execution.[1]

---

[1] The trial court's ruling was as follows: "This is a statutory proceeding. I understand that, but it's clear to me from the fact situation that what we have here, those moneys should have been returned to Mr. Altham; they were not. . . . That based upon the argument heard in front of me that there were certain discussions made between you and the sheriff, the [first execution] was then returned. I can understand what you did . . . but that money was frozen—which I term to be illegal. I am frankly, convinced I do

The trial court signed the hearing transcript in accordance with Practice Book § 4059, now Practice Book (1998 Rev.) § 64-1 (a) (6), in lieu of filing a memorandum of decision. The commissioner appeals from that judgment.

On February 25, 1998, the parties were ordered to appear before this court to explain why Altham had not filed a brief in response to the commissioner's appellate brief. Altham failed to appear, and the commissioner requested, as a sanction, that this court vacate the trial court judgment pursuant to Practice Book (1998 Rev.) § 85-1, formerly § 4184A, and Practice Book (1998 Rev.) § 85-2, formerly § 4184B.[2] This court declined the commissioner's request; however, we ordered that the appeal be considered on the basis of the commissioner's brief and the record only, thereby precluding Altham, the appellee, from presenting oral argument. The order

have those powers. . . . Mr. Altham, those moneys are exempt and shall be returned to you. Mr. [David] Wrinn, [assistant attorney general], to [attach] those moneys while they were pending in front of me on a different issue and to turn around and issue an alternative process, which was the subject of the matter before me, I believe is improper. I understand that you perhaps believed as I concluded after that hearing that the levy would fail because it was untimely, so you chose an alternative means, but the only reason those moneys were there was because they were being held improperly. Mr. Altham would have had use of them, and he is going to get use of them. Those moneys are deemed exempt."

[2] Practice Book (1998 Rev.) § 85-1, formerly § 4184A, provides in relevant part: "If a party shall fail to defend against an appeal with proper diligence, the court may set aside in whole or in part the judgment under attack, with costs, and direct the entry of an appropriate final judgment by the trial court against the party guilty of the failure. If that party is a defendant in the action, the directed judgment may be in the nature of a judgment by default for such amount as may, upon a hearing in damages, be found to be due. . . . The statutory provisions regarding the opening of judgments of nonsuit and by default shall not apply to a judgment directed under the provisions of this rule."

Practice Book (1998 Rev.) § 85-2, formerly § 4184B provides in relevant part: "Actions which may result in the imposition of sanctions include, but are not limited to, the following: (1) Failure to comply with rules and orders of the court. . . ."

from this court stated: "It appearing that this appeal has not been defended with proper diligence, it is hereby ordered, sua sponte, that the appeal will be considered on the basis of the appellant's brief and the record only. The appellee will not be allowed to present oral argument."

"[General Statutes §] 52-367b governs the execution against debts due from banks. Once a judgment debtor claims an exemption from execution pursuant to § 52-367b (e),[3] the court must schedule a short calendar hearing on the exemption claim. The exemption claim filed by the debtor is considered prima facie evidence that the claimed exemption exists. General Statutes § 52-367b (f). The court, after conducting this hearing, must decide whether the exemption claim is meritorious; General Statutes § 52-367b (i); and, if so, whether all or only part of the money deposited in the subject account is exempt. General Statutes § 52-367b (j)." *People's Bank* v. *Perkins*, 22 Conn. App. 260, 262–63, 576 A.2d 1313, cert. denied, 216 Conn. 813, 580 A.2d 58 (1990).

Section 52-367b sets forth the circumstances under which execution against debts due to a creditor, which are held by a banking institution, may be levied. Section 52-367b (a) provides in relevant part that "[e]xecution may be granted pursuant to this section against any debts due from any banking institution to a judgment debtor who is a natural person, except to the extent such debts are protected from execution by [statute]

---

[3] General Statutes § 52-367b (e) provides: "Claim of exemption. To prevent the banking institution from paying the serving officer, as provided in subsection (h) of this section, the judgment debtor shall give notice of a claim of exemption by delivering to the banking institution, by mail or other means, the exemption claim form or other written notice that an exemption is being claimed. The banking institution may designate an address to which the notice of a claim of exemption shall be delivered. Upon receipt of such notice, the banking institution shall, within two business days, send a copy of such notice to the clerk of the court which issued the execution."

. . . ." Here, the trial court improperly created an exemption not otherwise provided by statute. *People's Bank* v. *Perkins*, supra, 22 Conn. App. 260. Specifically, the trial court found that the entire account was exempt from execution because of the proceedings related to the service of the first execution, which was untimely and therefore improper. This exemption is not provided for in the General Statutes. To the contrary, General Statutes § 52-352b sets forth the list of statutory exemptions.[4] We conclude that the trial court's exemption is

[4] General Statutes § 52-352b provides: "Exempt property. The following property of any natural person shall be exempt:

"(a) Necessary apparel, bedding, foodstuffs, household furniture and appliances;

"(b) Tools, books, instruments, farm animals and livestock feed, which are necessary to the exemptioner in the course of his or her occupation, profession or farming operation;

"(c) Burial plot for the exemptioner and his or her immediate family;

"(d) Public assistance payments and any wages earned by a public assistance recipient under an incentive earnings or similar program;

"(e) Health and disability insurance payments;

"(f) Health aids necessary to enable the exemptioner to work or to sustain health;

"(g) Workers' compensation, social security, veterans and unemployment benefits;

"(h) Court approved payments for child support;

"(i) Arms and military equipment, uniforms or musical instruments owned by any member of the militia or armed forces of the United States;

"(j) One motor vehicle to the value of one thousand five hundred dollars, provided value shall be determined as the fair market value of the motor vehicle less the amount of all liens and security interests which encumber it;

"(k) Wedding and engagement rings;

"(*l*) Residential utility deposits for one residence, and one residential security deposit;

"(m) Any assets or interests of an exemptioner in, or payments received by the exemptioner from, a plan or arrangement described in section 52-321a;

"(n) Alimony and support, other than child support, but only to the extent that wages are exempt from execution under section 52-361a;

"(o) An award under a crime reparations act;

"(p) All benefits allowed by any association of persons in this state towards the support of any of its members incapacitated by sickness or infirmity from attending to his usual business;

"(q) All moneys due the exemptioner from any insurance company on any insurance policy issued on exempt property, to the same extent that

not provided for by statute and, accordingly, the judgment should be reversed.

The judgment is reversed and the case is remanded for further consideration of the exemption claim.

In this opinion LAVERY, J., concurred.

FOTI, J., dissenting. While I agree that the matter should be reversed and remanded, I must respectfully disagree with the majority's decision to consider this appeal on its merits and to remand it for "further consideration of the exemption claim."

"If a party shall fail to defend against an appeal with proper diligence, the court may set aside in whole or in part the judgment under attack, with costs, and direct the entry of an appropriate final judgment by the trial court against the party guilty of the failure. . . ." Practice Book (1998 Rev.) § 85-1, formerly § 4184A. Other "[a]ctions which may result in the imposition of sanctions include, but are not limited to, the following: (1) Failure to comply with rules and orders of the court. . . ." Practice Book (1998 Rev.) § 85-2, formerly § 4184B.

In addition to the power to sanction conferred by published rules of the court, courts have an inherent

the property was exempt;

"(r) Any interest of the exemptioner in any property not to exceed in value one thousand dollars;

"(s) Any interest of the exemptioner not to exceed in value four thousand dollars in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the exemptioner under which the insured is the exemptioner or an individual of whom the exemptioner is a dependent;

"(t) The homestead of the exemptioner to the value of seventy-five thousand dollars, provided value shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it; and

"(u) Irrevocable transfers of money to an account held by a bona fide nonprofit debt adjuster licensed pursuant to sections 36a-655 to 36a-665, inclusive, for the benefit of creditors of the exemptioner."

power that exists independently of the rules "because of the control that must necessarily be vested in courts in order for them to be able to manage their own affairs so as to achieve an orderly and expeditious disposition of cases." (Internal quotation marks omitted.) *Srager* v. *Koenig*, 42 Conn. App. 617, 620, 681 A.2d 323, cert. denied, 239 Conn. 935, 936, 684 A.2d 709 (1996); *Feuerman* v. *Feuerman*, 39 Conn. App. 775, 777, 667 A.2d 802 (1995). The inherent powers of courts are those that are necessary to the exercise of all others. *In the Matter of Presnick*, 19 Conn. App. 340, 347, 563 A.2d 299, cert. denied, 213 Conn. 801, 567 A.2d 833 (1989).

By failing to file a brief and by failing to appear before this court on February 25, 1998, the defendant, an attorney, has not only failed to defend against this appeal with proper diligence, but has also shown his disregard of appellate procedure and lack of respect for this court.

I would set aside the judgment and remand the matter to the trial court with direction to deny the defendant's claim of exemption from execution.